WILLIAM W. WILSON AND SILAS REYNOLDS,

*vs.*

LOUISA A. WILSON, ADMINISTRATRIX OF BARKLEY WILSON, DECEASED.

*Sussex, September T., 1867.*

Notice to a purchaser of lands of the mere existence of a judgment, which is a lien upon the lands, is not sufficient to affect the purchaser with any equity existing between the parties to the judgment, such as a right to have the judgment collected out of a particular tract of land.

The plaintiff in a judgment and his assignees have, as part of the contract, a right to all the remedies appropriate for its collection, including the election to enforce it against any real estate of the defendant, who cannot, afterwards, abridge this right by selling a part of his real estate, or by any special arrangement with the purchaser for the payment of the judgment out of the land sold, without the creditor's permission.

The creditor may be compelled in equity to enforce his lien first against as much of the debtor's real estate as remains unsold, but this is only at the instance, and for the benefit, of a third party, the purchaser.

PETITION FOR AN INJUNCTION TO RESTRAIN A SUIT AT LAW.—The petition set forth the following facts :— Judgment was confessed, March 2d, 1852, by William W. Wilson, as principal, and Barkley Wilson, Josiah Marvel, James Wilson and Silas Reynolds, as sureties, in favor of the Farmer's Bank, for $670, with interest from February 19th, 1852. At the same time William W. Wilson was the owner, in fee simple, of a tract of one hundred acres on which the judgment was the only lien. On September 1st, 1852, William W. Wilson and Levin Pettyjohn agreed for an exchange of farms, the above mentioned farm of Wilson, for one of one hundred and eleven acres, then held by Pettyjohn. Mutual deeds of conveyance were executed by them and their wives, the the same day. The farm, originally of Wilson, afterwards, passed by sundry mesne conveyances to Daniel J. Layton. Thus, Pettyjohn and wife conveyed to C. S. Layton, who, as is alleged, had notice of the judgment, doubtless meaning, when he bought, although the petition is not explicit ; Layton conveyed to Jacob D. Kimmey "who had like notice." Next, both farms were sold by the Sheriff under a judgment against Pettyjohn, and the original Wilson farm was bought by Caleb R. Layton, he, then and there, having like notice of the judgment," and he for the nominal sum of $100 conveyed to Jacob D. Kimmey, who conveyed to Daniel J. Layton, who had "like notice of the judgment."

On the return of the Sheriff's sale, Wilson applied to have the proceeds of the Wilson farm applied to the Farmer's Bank judgment, but the Court refused, upon the ground that only Pettyjohn's interest was sold, leaving the tract, still subject to that judgment, in the hands of the purchaser. The sale was confirmed and Wilson turned out of possession of the farm he bought from Pettyjohn. Barkley Wilson, one of the surities, paid the bank judgment, and took an assignment, but not according to the Statute. He then employed an attorney to collect it out of the Wilson farm, but died before this had been effected, and the attorney in fact of the administratrix, desired the attorney to proceed, but before the assignment was completed a *scire facias* was ordered by other attorneys, and a *non suit* was granted. Afterwards a new assignment was obtained by the administratrix, and *scire facias* No. 72 to October term, 1866, was issued at suit of the administratrix as assignee of the Farmers' Bank, against Wm. W. Wilson and Silas Reynolds, who have survived Josiah Marvel, James Wilson and Barkley Wilson, deceased. No *terra tenants* of lands of Josiah Marvel and James Wilson, nor Daniel J. Layton, nor *terre tenants* of the Wilson farm (though it was the only land of Wm. W. Wilson at the date of the judgment) were summoned or made parties in the *scire facias.* The petition charges that the object of this omission was to collect the judgment out of lands of William W. Wilson, acquired since the date of the judgment, and out of lands in possession of Reynolds as *terre tenant.* It was further alleged that the Wilson farm was of ample value to pay the judgment. The prayer was for an injunction to restrain further proceedings in the *scire facias* until the administratrix has exhausted her remedy against the Wilson farm.

*Wright,* for the petitioners, upon filing the petition, moved for an injunction.

THE CHANCELLOR :—

The injunction must be refused. There are two objections.

1. One is founded upon the rights of the present holder of the Wilson farm. He is a purchaser for a valuable consideration, deriving title also through a succession of such purchases. So I must assume, nothing to the contrary being alleged, except as to the consideration of the deed from C. R. Layton to Kimmey, after the Sheriff's sale. I can attach no effect to this. Nor is he affected with notice of any equity, even if there had been such, between the original parties, Wilson and Pettyjohn, making the land chargeable with the judgment in the hands of Pettyjohn to the relief of Wilson, as if the amount of the judgment had been deducted from the purchase money paid by Pettyjohn, upon the understanding that Wilson should be relieved from the judgment. No such arrangement is alleged, and it cannot be presumed ; but even if it had been, and out of it an equity had arisen in favor of Wilson against Pettyjohn, it would not follow a purchase from him for a valuable consideration, and without notice that Pettyjohn took the land subject to such arrangement. Notice of the existence of the judgment, which is alleged with respect to all the purchases, is not sufficient to make the purchasers of the land first liable. A purchaser, knowing that the land he buys is subject to an existing judgment against the vendor and nothing more, may fairly rely (if he chooses to risk it) upon the ability of the vendor to pay the judgment, and upon his, the purchaser's, well understood right to have any other estate of the debtor first applied to a lien in exoneration of land sold to a purchaser for consideration. Again, the fact that the land sold by Pettyjohn to Wilson, in exchange for the Wilson farm, was afterwards sold in execution of a judgment against Pettyjohn, so that, in the result, the consideration for Wilson's conveyance failed, does not

affect the present holder of the Wilson farm. Whether, even if the farm still remained in Pettyjohn, equity would undertake, in this indirect way, to indemnify Wilson, instead of leaving him to his legal remedy, might be questioned. But, at all events, this circumstance does in no way affect the present holder. Neither he, nor any through whom he derived his title, is alleged to have purchased with notice of it. And, in fact, the title to the Wilson farm had passed from Pettyjohn through two purchasers, C. S. Layton and Kimmey, before Wilson was divested of the land conveyed to him in exchange, so that, so far as this circumstance was concerned, the title to the Wilson farm stood complete in those two purchasers, and as it stood in them it must pass to their purchasers, even if they had had notice of the Sheriff's sale before their purchases.

2. The other objection is founded upon the rights of the judgment creditor. Wilson, in giving the Bank this judgment, gave to the Bank and to its assignees, as part of the contract, all the legal remedies appropriate for its collection, and among them the election to enforce it against any part of his real estate then held or to be acquired. It was not competent for him, afterwards, to abridge, in any degree, this right of election, by selling a part of his real estate, or even by any special arrangement (had there been such) between him and the purchaser, for the payment of the judgment out of the land sold, made without the creditor's permission. It is true that when a debtor sells part of his real estate, which is all subject to a lien, equity will oblige the creditor to proceed first against the remaining estate of the debtor, but this is done at the instance and for the benefit of a third party, the purchaser, and in consideration of his equity as a purchaser for value. It will not be done in favor of the debtor himself, conrtrary to rights arising out of his own contract. It was a long time before, even in favor of a surety, a creditor would be compelled first to proceed against the principal. *Hayes vs. Ward*, 4 *Johns, Ch.* 132. But in favor of the principal

debtor, equity will not interfere with the creditor's choice of any one of several funds to which his judgment entitles, him at law, to resort. A contrary doctrine was held by Lord Thurlow in a very remarkable case, *Wright vs. Nutt*, 1 *H. Bla.* 136, and by Lord Loughborough, extra-judicially in *Folliott vs. Ogden, Ib.* 135 ; but against these are the greater authority of Lord Parker in *Holditch vs. Mist*, 1 *P. W.* 695, and Lord Eldon in *Wright vs. Simpson*, 9 *Ves. Jr.* 728. The doctrine of Lord Thurlow is considered as overruled, 1 *Sto. Eq. Jur. Sec.* 640. It can make no difference that the lands, now held by Wilson, and against which the judgment, if recovered may be used, were acquired *after* the date of the judgment. The judgment must be supposed to have been given in contemplation of the creditor's right, under it, to take land, after acquired, as well as land then held.

It may be that the judgment was recovered adversely and not confessed under a warrant of attorney. Still the creditor's rights would be of the same nature, whether arising out of contract with the debtor in the execution of a bond and warrant, or whether attached by law to the judgment record.

I may add that Reynolds, as a surety, holds a position different from that of Wilson. He is entitled. should Wilson's other property prove insufficient, to have the Wilson farm applied to exonerate him. But this affords no ground to restrain the revival of the judgment against him,—certainly none to restrain its revival against Wilson, and it must be against both, if revived at all. Reynold's rights, as a surety, can be sufficiently protected, after the judgment, by the control of execution upon it. The omision to serve the *terre tenants* of the Wilson farm can make no difference as to him. I do not see that it would preclude the creditor from a *scire facias* against the *terre tenant*, hereafter, if necessary ; but, at all events, the creditor's omission, however it might affect *his* power to proceed

under his judgment, if the Wilson land were thus necessary to complete the collection of it, would not be allowed to prejudice the surety, but the creditor would lose his remedy against him.